USCA1 Opinion

 

 August 31, 1992 ___________________ No. 92-1881 IN RE: GRAND JURY SUBPOENA. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ___________________ Before Torruella, Cyr and Stahl, Circuit Judges. ______________ ___________________ Albert F. Cullen, Jr., Susan A. Correia and Cullen & Butters _____________________ ________________ ________________ on brief for appellant. A. John Pappalardo, United States Attorney, and Mark W. ___________________ ________ Pearlstein, Assistant United States Attorney, on brief for __________ appellee. __________________ __________________ Per Curiam. At issue here is whether an individual ___________ involved in a Massachusetts "nominee trust" can assert the Fifth Amendment privilege against self-incrimination in order to resist a grand jury subpoena seeking trust records. The district court held that no privilege was available because the trust was a "collective entity." We agree and therefore affirm the order of contempt. I. In December 1986, appellant John Doe, along with his brother, created a nominee trust (the "Roe trust") for the purpose of conducting real estate transactions. Doe and his brother designated themselves as the sole beneficiaries and the sole trustees. The Roe trust purchased a 204-unit apartment complex in Arlington, Massachusetts that same month, thereafter converting it to condominium form and offering the units for sale.1 Subsequently, a federal grand jury commenced an investigation into whether fraudulent information had been provided to federally insured financial institutions in connection with the sale and financing of these condominiums. As part of this inquiry, Doe was served on February 14, 1992, in his capacity as custodian of records, with a subpoena duces tecum calling for the ____________ ____________________ 1. According to an FBI affidavit, the Roe trust undertook similar measures with respect to a second complex containing 124 units, and eventually succeeded in selling over half the units at each location. -2- production of various trust records. The scope of the subpoena was narrow and specific: it called for "[a]ll closing documents, including, but not limited to, purchase and sale agreements, with respect to the sale of [ten specified units at the Arlington complex] sold in January 1989 to [a specified individual]." Doe refused to comply with the subpoena, claiming that to do so would impinge on his personal Fifth Amendment privilege. The district court granted the government's motion to compel, but Doe persisted in his refusal to produce the records at an appearance before the grand jury on July 13. That same day, the district court held him in contempt, and on July 29 it denied his motion for a stay pending appeal. Doe filed the instant appeal on July 31, and on August 4 we stayed the order of confinement pending appeal. II. The collective entity rule reflects the notion that the Fifth Amendment privilege against self-incrimination is a "purely personal" one, Bellis v. United States, 417 U.S. 85, ______ ______________ 90 (1974), which applies "only to natural individuals," United States v. White, 322 U.S. 694, 698 (1944). The ______________ _____ privilege thus "cannot be utilized by or on behalf of any organization." Id. at 699. In particular, "an individual ___ cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a -3- representative capacity, even if these records might incriminate him personally." Bellis, 417 U.S. at 88; accord, ______ ______ e.g., Braswell v. United States, 487 U.S. 99, 109 (1988) ____ ________ _____________ (collective entity's custodian of records cannot resist subpoena on ground that act of production, as opposed to contents of records, would be personally incriminating). As we noted in In re Grand Jury Proceedings (John Doe Co., _______________________________________________ Inc.), 838 F.2d 624 (1st Cir. 1988), the "often quoted _____ rationale" for the collective entity rule is that individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self- incrimination. Id. at 625 (quoting White, 322 U.S. at 699).2 See generally ___ _____ _____________ Braswell, 487 U.S. at 104-09 (reviewing evolution of rule). ________ Whether an organization is properly deemed a collective entity has little to do with its size. "It is well settled that no privilege can be claimed by the custodian of ____________________ 2. See also Bellis, 417 U.S. at 90 ("In view of the _________ ______ inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations."). -4- corporate records, regardless of how small the corporation may be." Bellis, 417 U.S. at 100 (applying rule to three- ______ person partnership). Indeed, Braswell held the rule ________ applicable to a one-person corporation.3 See 487 U.S. at ___ 101; accord, e.g., United States v. Lawn Builders of New ______ ____ _____________ ______________________ England, Inc., 856 F.2d 388, 394 (1st Cir. 1988) (per ______________ curiam). Rather, in defining the nature of a collective entity, the Court has emphasized the existence of an organization which is recognized as an independent entity apart from its individual members. The group must be relatively well organized and structured, and not merely a loose, informal association of individuals. It must maintain a distinct set of organizational records, and recognize rights in its members of control and access to them.... [I]t must be fair to say that the records demanded are the records of the organization rather than those of the individual .... Bellis, 417 U.S. at 92-93. See, e.g., 1 W. LaFave & J. ______ ___ ____ Israel, Criminal Procedure 8.12(b), at 695 (1984) (entity ___________________ exception not inapplicable "simply because an organization embodie[s] a combination of personal and group interests; the presence of an organizational structure serving the group interest [is] sufficient"). The crucial factor, the Bellis ______ ____________________ 3. At the same time, the Braswell Court held that the ________ government could make no evidentiary use of the act of production against the custodian in his individual (as opposed to representative) capacity. 487 U.S. at 118 n.11. It also left open the question whether the privilege might apply "when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." Id. ___ -5- Court indicated, was whether the organization has "an established institutional identity independent of its individual [constituents]." 417 U.S. at 95. See In re Two ___ _________ Grand Jury Subpoenae Duces Tecum, 793 F.2d 69, 72 (2d Cir. _________________________________ 1986) (describing this as the "critical issue"). Doe acknowledges that ordinary trusts have been held to fall within this definition. See Watson v. Commissioner of ___ ______ _______________ Internal Revenue, 690 F.2d 429, 431 (5th Cir. 1982) (per ________________ curiam); United States v. Harrison, 653 F.2d 359, 361-62 (8th _____________ ________ Cir. 1981); In re Grand Jury Proceedings (Hutchinson), 633 ___________________________________________ F.2d 754, 756-57 (9th Cir. 1980); In re Grand Jury Subpoena, _________________________ No. 91-10708-Z (D. Mass 1991) (non-nominee Massachusetts realty trusts). He contends, however, that a Massachusetts nominee trust is not an ordinary trust. Indeed, he argues that it should not be regarded in this context as a "trust" at all, but rather as something "comparable to a sole proprietorship" or "similar to a joint tenancy or a tenancy by the entirety." Brief at 11. We agree that the Roe trust _____ (in common with all nominee trusts) possesses some unique characteristics, but we disagree that these suffice to exclude it from the definition of collective entity. A nominee trust is a "form of ownership of real estate which is in considerable use in Massachusetts as a title- holding device," Penta v. Concord Auto Auction, Inc., 24 _____ ___________________________ Mass. App. 635, 639 (1987), "one which affords certain tax -6- [and other] advantages," Apahouser Lock & Sec. Corp. v. ______________________________ Carvelli, 26 Mass. App. 385, 388 (1988). Its typical ________ features are the following: (1) the names of the beneficiaries are filed with the trustees, rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustees, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interests. See Birnbaum & Monahan, The Nominee ___ ___________ Trust in Massachusetts Real Estate Practice, 60 Mass. L.Q. _____________________________________________ 364, 364-65 (1976).4 The third listed feature is the key to the nominee nature of the trust. Unlike in a "true trust," the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of (in effect, as agents for) the beneficiaries. Id. at 365. See, e.g., Johnston v. Holiday Inns, Inc., 595 ___ ___ ____ ________ __________________ F.2d 890, 893 (1st Cir. 1979) (trustees of nominee trust have ____________________ 4. See also Cohen, Massachusetts Estate Tax Planning for _________ _______________________________________ Non-Massachusetts Residents Owning Real Estate Located in _____________________________________________________________ Massachusetts, 70 Mass. L. Rev. 124, 126-29 (1985); Partan, _____________ Nominee Trusts: Refresher Course, 14 Mass. Law. Wkly. 850 __________________________________ (Feb. 24, 1986); MCLE, Forms and Tax Consequences of Real ____________________________________ Estate Ownership, 193-205, 221-32 (1986). ________________ -7- "only perfunctory duties"); Apahouser, 528 Mass. App. Ct. at _________ 135 ("trustees are frequently seen as agents for the principals' convenience rather than as trustees in the more familiar fiduciary sense"). The declaration of trust creating the Roe trust contains each of the features described above. In particular, the discretionary authority of the trustees is narrowly circumscribed. They are directed to hold the trust principal, receive the income therefrom, and distribute it to the beneficiaries at least annually. And they are authorized to open and close bank accounts, deposit and withdraw funds, and sign checks. Apart from these functions, "the Trustees shall have no power to deal in or with the Trust Estate except as directed by the beneficiaries." Declaration of Trust 3. As Doe correctly notes, the fact that a nominee trust's beneficiaries retain control over the trustees has led, in other contexts, to the "trust" status being disregarded. See, e.g., Druker v. State Tax Comm'n, 374 Mass. 198, 201 ___ ____ ______ _________________ (1978) ("extreme degree of control exercised by beneficiaries ... vitiates the creation of a trust for purposes of [state income] taxation").5 Doe relies particularly on two bankruptcy cases: In re Village Green Realty Trust, 113 B.R. _________________________________ ____________________ 5. As it was unnecessary to its decision, the Druker Court ______ avoided deciding whether the nominee trust should be regarded as a partnership. 374 Mass. at 202 n.1. -8- 105 (Bankr. D. Mass. 1990), and In re Medallion Realty Trust, ____________________________ 103 B.R. 8 (Bankr. D. Mass. 1989), aff'd, 120 B.R. 245 (D. _____ Mass. 1990). Both courts held that nominee trusts were not "business trusts" within the meaning of the federal bankruptcy statute. More important, in determining how the entities should be characterized, they each disregarded the trust status and inquired into the relationship among the beneficiaries. The Village Green court, for example, stated: _____________ Since the beneficiaries of the nominee trust have the exclusive power to direct the activities of the trustee, it makes sense to view the beneficiaries as the owners of the trust res and to look to their relationship to each other for bankruptcy purposes. In other words, it is not the nominee trust itself that engages in business; it is the principals who engage in business activities, using the device of a nominee trust and the assistance of their trustee/agent. The relationship of the beneficiaries may be a partnership, corporation, co-tenancy or other entity. 113 B.R. at 114; accord Medallion Realty, 103 B.R. at 12. ______ ________________ After examining Massachusetts law, the Medallion Realty court ________________ determined that the "trust" was properly viewed as a partnership. Id. at 12-14. The Village Green court, by ___ _____________ contrast, simply dismissed the petition, putting the onus on the beneficiaries to refile under a proper format. 113 B.R. at 114-15. By analogy, Doe contends that we should overlook the trust status of the Roe trust. He further argues, without -9- elaboration, that construing the "trust" as a partnership (which would keep it within the definition of a collective entity) is precluded inasmuch as the declaration of trust fails to define the relationship between the beneficiaries. He concludes, accordingly, that he holds title to the property as co-tenant or sole proprietor, that the documents sought are his personal records, and that he can resist the subpoena on personal Fifth Amendment grounds. This line of reasoning falters on several grounds. Were we to disregard the Roe trust's nominal status as requested and attempt a redefinition under state law, it is safe to say we would not end up with a sole proprietorship.6 Doe, after all, is not the sole beneficiary. And we think it unlikely that we would end up with a tenancy in common. Something more than joint ownership would seem to be involved; through the vehicle of the Roe trust, Doe and his brother over several years engaged in the purchase, conversion, and attempted sale of over 300 condominium units, presumably for profit.7 Yet we are disinclined to undertake ____________________ 6. A sole proprietor (unlike the sole owner of a corporation) is not subject to the collective entity rule. See, e.g., Braswell, 487 U.S. at 104, 111 n.5. ___ ____ ________ 7. Moreover, even if the Roe trust were deemed a tenancy in common, we note that, in the view of one court at least, the collective entity rule would nonetheless apply. In In re _____ Grand Jury Proceedings (Shiffman), 576 F.2d 703 (6th Cir.), __________________________________ cert. denied, 439 U.S. 830 (1978), two individuals, who with ____________ their spouses owned real estate as tenants in common, opened a bank account under the name "G&S Investment." The sole -10- any such inquiry. For one thing, the present record militates against it. Doe conveniently proffers a redefinition of the Roe trust based exclusively on the terms of the trust declaration. It is true that little of relevance in this regard can be gleaned from that document. See Birnbaum & Monahan, supra, 60 Mass. L.Q. at 373 ("The ___ _____ declaration of trust which creates a nominee trust creates no 'association' among the beneficiaries and does not define their rights inter se with respect to the control of the _________ business."). Yet in order properly to characterize the legal status of the Roe trust, one would need to ascertain whether any subsidiary agreements existed between Doe and his brother regarding the trust's operations. Doe has offered no evidence in this regard. As the proponent of the privilege claim, it was his burden to do so. See, e.g., United States ___ ____ _____________ v. Wujkowski, 929 F.2d 981, 984 (4th Cir. 1991). Cf. United _________ ___ ______ States v. Bay State Ambulance and Hosp. Rental Service, Inc., ______ __________________________________________________ 874 F.2d 20, 28 (1st Cir. 1989) (attorney-client privilege). ____________________ purpose of that entity was to receive income from the property and disburse it to the owners after deducting for expenses. In response to a subpoena for G&S records, one of the owners interposed a Fifth Amendment claim. The court determined that G&S was not a partnership under state law, but nonetheless deemed the collective entity rule applicable. "Though there was no organized institutional activity equivalent to the usual business activity of the corporation or partnership, the records of G&S undeniably reflect transactions which were not wholly those of Dr. Shiffman." Id. at 707. He was thus held to possess the records in a ___ representative, rather than personal, capacity. -11- More important, we think such an inquiry unnecessary. In In re Grand Jury Proceedings (Hutchinson), the condemnee ___________________________________________ argued that the IRS considered her trust to be grantor- controlled, rendering it "a shell for purposes of the analysis set forth in Bellis." 633 F.2d at 757. The court, ______ while acknowledging that the trust "may possess certain characteristics that affect the way it is treated for federal tax purposes," nonetheless held that "its treatment for tax purposes is largely irrelevant to the determination of whether it is an organization separate and apart from its creator." Id. Analogously, we think that the Roe trust, ___ regardless of its technical status under state law, has a sufficiently "established institutional identity independent of its individual [constituents]," Bellis, 417 U.S. at 95, to ______ fall within the definition of collective entity. "An organization may constitute a collective entity even when it has not taken steps to formalize its status." In re _____ Two Grand Jury Subpoenae, 793 F.2d at 72 (finding collective _________________________ entity rule applicable to two-person law firm, despite lack of partnership agreement and lack of partnership tax returns). Here, the Roe trust possesses a formal status, the validity of which is not questioned under state law. See ___ Penta, 24 Mass. App. Ct. at 639. It was established in 1986 _____ by the execution and filing, with the appropriate registry of deeds, of a trust declaration detailing its structure and -12- operation, and has remained in operation since that time. The trustees are authorized to act independently on behalf of the trust in specific (albeit limited) ways--e.g., ____ maintaining bank accounts; writing checks.8 Third parties are entitled to rely on actions taken by the trustees, without inquiring as to their authority. The trustees, even if deemed agents with respect to third-party transactions, retain fiduciary obligations with regard to the trust itself. And, while the evidence is unclear in the instant case, it cannot be doubted in general that a nominee trust is held out to the world as being separate and apart from its beneficiaries; indeed, one of the inducements for creating such an entity is to enable the latter to remain anonymous. It is also significant, of course, that Doe is not the sole beneficiary. As with his contention that the trust is a sole proprietorship, his assertion that the trust records are his "personal papers" flies in the face of this fact. The other beneficiary obviously has an equal interest in, and an equal right of access to, such records. To the extent that the collective entity rule still draws nurture from notions of privacy, Doe cannot be said to have any expectation of ____________________ 8. Doe states (without supporting evidence) that the trust maintains no separate bank accounts. Yet the trust declaration provides therefor. He similarly states that the trust has filed no separate tax returns. As just mentioned, the same was true in In re Two Grand Jury Subpoenae, 793 F.2d ______________________________ at 72, where a collective entity was held to exist. -13- privacy with respect to such records. See In re Grand Jury ___ ________________ Proceedings (Shiffman) 576 F.2d 703, 707 (6th Cir.), cert. ______________________ _____ denied, 439 U.S. 830 (1978). This consideration, in any ______ event, reinforces the view that Doe possesses, and is directed to produce, the trust records in his representative rather than personal capacity. Finally, we might observe that Doe has on occasion mischaracterized, and otherwise failed to address, the nature of the privilege at stake here. To the extent that the Fifth Amendment applies to the contents of private papers--a matter currently in some doubt, ________ see United States v. Doe, 465 U.S. 605, 610-12 (1984); id. at ___ _____________ ___ ___ 618 (O'Connor, J., concurring)--it does so "only in rare situations, where compelled disclosure would break the heart of our sense of privacy." In re Steinberg, 837 F.2d 527, 530 _______________ (1st Cir. 1988) (quotations omitted). Yet the trust records here, pertaining to the sale of condominiums, cannot conceivably be deemed "intimate personal papers." Id. ___ Contrary to Doe's suggestion, therefore, the contents thereof are clearly not privileged. Rather, the potential for self- incrimination arises only from the act of production, i.e., from the tacit concession that the records exist, are in Doe's possession, and are authentic. See, e.g., Fisher v. ___ ____ ______ United States, 425 U.S. 391, 410-11 (1976). As mentioned, _____________ Braswell held that the act-of-production privilege does not ________ apply to a collective entity's custodian of records. Yet -14- were we to accept Doe's argument that the collective entity rule is inapplicable, he would have the further task of demonstrating a viable act-of-production privilege. Curiously, Doe has failed to address this concern. We note only that, given his concession that the ten condominium sales in question occurred, and given the specificity with which the subpoena describes the documents sought, it is by no means clear that he would be able to establish such a claim. See id. at 411 (describing "foregone conclusion" ___ ___ exception); accord Doe, 465 U.S. at 614 n.13. See also 1 W. ______ ___ _________ LaFave & J. Israel, supra, 8.12, at 181 n. 25.16 (Supp. _____ 1991) (noting that communication of authenticity may be non- testimonial when specificity of subpoena obviates need of custodian to discriminate among documents). The order of contempt is affirmed. __________________________________ -15-